**E-FILED**

**12-24-2020, 08:00**
Scott G. Weber, Clerk
**Clark County**

1

# IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON

## FOR THE COUNTY OF CLARK

| | |
|---|---|
| **AMBER NOLLKAMPER**, an individual,<br> **Plaintiff,**<br><br> v.<br><br> **SHIN-ETSU HANDOTAI AMERICA INC.,**<br> a foreign corporation, *dba* SEH America,<br> **Defendant.** | **Case No. 20-2-02465-06**<br><br> **SUMMONS (20 days)** |

**TO SHIN-ETSU HANDOTAI AMERICA INC.:** A lawsuit has been started against you in the above-entitled court by Amber Nollkamper. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons. In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what she asks for because you have not responded. If you serve a notice of appearance on the undersigned person you are entitled to notice before a default judgment may be entered. Any response or notice of appearance which you serve on any party to this lawsuit must also be filed by you with the court within 20 days after the service of summons, excluding the day of service. If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time. This summons is issued pursuant to Rule 4 of the Civil Rules for Superior Court of the State of Washington.

David A. Schuck, WSB 37285
dschuck@wageclaim.org
Attorney for Plaintiff
208 E 25th Street
Vancouver, WA 98663
Telephone Number: (360) 566-9243

DATED: December 23, 2020.

Summons - Page 1

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

18

E-FILED

12-24-2020, 08:00
Scott G. Weber, Clerk
Clark County

1
2
3
4
5
6
7

8        IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON

9                    FOR THE COUNTY OF CLARK

10   AMBER NOLLKAMPER, an individual,

11                    **Plaintiff,**                    Case No.  20-2-02465-06

12        v.                                            **COMPLAINT (Unlawful
                                                        Employment Discrimination)**

13   **SHIN-ETSU HANDOTAI AMERICA INC.,**
     a foreign corporation, *dba SEH America,*          **Jury Trial Requested**
14

15                    **Defendant.**

16        COMES NOW the plaintiff Amber Nollkamper, by and through the attorneys at

17   Schuck Law LLC, and for her complaint against Defendant alleges as follows:

18                         I.     <u>PARTIES</u>

19   1.   Plaintiff Amber Nollkamper is an individual who at all times material resided in Clark

20   County, Washington.

21   2    Defendant Shin-Etsu Handotai America Inc. (*dba,* and herinafter, "SEH America" or

22   "SEH") is a foreign corporation licensed and authorized to do business in the State of

23   Washington and which is doing business in  Clark County.

24                    II.   <u>JURISDICTION / VENUE</u>

25   3.   Plaintiff was employed in  Clark County, Washington; and all acts complained of

26   affecting her employment and giving rise to this litigation occurred in Clark County,

---

Complaint - Page 1
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1    Washington; and subject matter jurisdiction, personal jurisdiction, and venue are properly

2    before this Court.

3    **III.   INTRODUCTION AND FACTS COMMON TO CLAIMS**

4    4.      Defendant SEH America and its purported parent company, SEH Ltd., hold

5    themselves out as the world's largest manufacturer / producer of semiconductor silicon

6    wafers, which are used in computer circuits.

7    5.      Defendant hired Plaintiff in or around April 2018 as part of Defendant's "IT / IS"

8    subdepartment.  Defendant's IT / IS positions deal, broadly and in simple terms, with

9    Defendant's information systems and software.  Plaintiff was hired as an IT / IS Supervisor.

10   6.      Defendant had four IT / IS Supervisors, including Plaintiff.  Defendant admits and

11   argues that one of the four positions, held by a Mr. Zatarian, has a substantially reduced scope

12   of duties and qualifications as compared to the other IT / IS Supervisor positions, and is paid

13   less.  Plaintiff generally agrees with this characterization.

14   7.      "Supervisor" is the lowest level of the supervisory- or managerial-level jobs discussed

15   herein.  Above Supervisor in position and pay, at least on paper, is Senior Supervisor; above

16   that, Manager, and above that, Vice President.

17   8.      Although Defendant has a substantial number of Senior Supervisor, Manager, and

18   Vice President positions, it employs no women as Senior Supervisors, only two women as

19   Managers (one of whom is a non-supervisory "Manager"), and no women as Vice Presidents.

20   9.      Defendant's ultimate and key decisionmakers on matters of pay and promotion such as

21   those affecting Plaintiff are all men.

22   10.     Plaintiff has often heard Defendant's employees, including various supervisory-level

23   employees, refer to Defendant's all-male group of SeniorSupervisor and nearly-all-male group

24   of Managers as a "good ol' boys' club" or similar words to that effect.

25   11.     Defendant's four IT / IS Supervisors, including Plaintiff, all reported to a single IT / IS

26   Manager.  With the exception of Plaintiff herself, all these people are male.

Complaint - Page 2
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

12.     Plaintiff was originally approached and interviewed for her position as IT / IS Supervisor by the IT / IS Manager, who was familiar with her qualifications and capabilities from their previous work together at a different company.

13.     Plaintiff communicated with the IT / IS Manager and with Defendant's Human Resources during her hiring process.  During those hiring discussions, the IT / IS Manager asked Plaintiff for her salary demands.  Plaintiff responded with a range of $120,000 - $130,000, which – although unbeknownst to Plaintiff at the time — is in the general range of what Defendant pays its other IT / IS Supervisors, with the exception of the position with reduced duties as referenced above.

14.     The IT / IS Manager also asked Plaintiff for her current salary information, which Plaintiff divulged.

15.     The IT / IS Manager indicated that it was impossible for Defendant to meet Plaintiff's salary demand.

16.     Defendant initially offered to pay Plaintiff a salary of $102,000, which was less than Plaintiff demanded, less than it paid the other two comparable male supervisors, and less than Plaintiff had divulged that she was already making in a different job.

17.     Defendant ultimately raised its offer to $105,000, which was still less than Plaintiff demanded, less than it paid the other two comparable male supervisors, and less than Plaintiff had divulged that she was already making in a different job.  Defendant's IT / IS Manager stated that it was not possible for Defendant to offer her more or to pay her more.

18.     However, being interested in what she believed to be the challenges and opportunities of the position, Plaintiff accepted.

19.     Plaintiff was assigned to supervise a team of IT / IS employees.  Plaintiff assembled her own team in part and chose to include well-qualified women employees on her team, as there exists no reason not to do so.

20.     Plaintiff's team was the only IT / IS team that had any women on it.  The other three

Complaint - Page 3
Case No. 20-2-02465-06

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1    IT / IS Supervisors were all men, and all the employees on each of their teams were also all

2    men, and the IT / IS Manager was also a man, and the upper-level management to whom he

3    reports are also entirely men.  A lone female contractor was once assigned to work with one

4    of the all-male IT / IS teams, but promptly quit.  Only Plaintiff's team included any women.

5    21.      Defendant allowed and permitted the other IT / IS Supervisors and their all-male

6    teams to harass, deride, and mock Plaintiff and her team because Plaintiff is a woman and

7    because her team included women.  Such offensive behaviors and comments include but were

8    not limited to the male IT / IS employees from other teams displaying pornography in the

9    workplace, the male IT / IS Supervisors and Manager refusing to put a stop to it when

10   Plaintiff and the women on her team complained, and one of the male IT / IS Supervisors

11   publicly referring to Plaintiff's team as "the PMS team" because the team included women.

12   22.      These behaviors and comments were intended to have the effect, and did have the

13   effect, of being offensive and insulting to Plaintiff and to the women on her team, of belittling

14   their skills and contributions and concerns, and of imposing harassing, intimidating,

15   offensive, and hostile circumstances upon them in their workplace because they were women.

16   23.      Plaintiff and the women on her team complained of the above incidents and others like

17   them, but Defendant did not put a prompt stop to the offensive behaviors, and instead

18   condoned the sexist and discriminatory conduct and the offensive and hostile work

19   environment it created.

20   24.      Defendant's IT / IS Manager was particularly aligned with and sympathetic to the

21   worst harasser, an IT / IS Supervisor whose conduct included calling Plaintiff's team "the

22   PMS team."  Defendant and its Manager sheltered and protected this employee from

23   repercussions and refused to impose any significant discipline or to put a stop to his offensive

24   conduct.  To the contrary, the Manager frequently referred to this employee, with admiration

25   or affection, as the "father" and "patriarch" of the IT / IS subdepartment.

26   25.      At the same time the Manager praised this Supervisor as a "father" and "patriarch"

Complaint - Page 4
Case No. 20-2-02465-06

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1   while he conducted a campaign of harassment against Plaintiff and other women on her IT /

2   IS team, he was on information and belief also receiving multiple complaints about this

3   Supervisor's poor performance more generally.  The ultimate response was that the Manager

4   reassigned many of this Supervisor's subordinates to report to the Manager directly, all while

5   praising the harassing supervisor as a "father" and "patriarch" of the IT / IS subdepartment

6   and refusing to impose any consequences on him for his harassing behavior.

7   26.    Plaintiff understands that this Supervisor has since been given the title of IT / IS

8   "Architect."  Plaintiff understands that this was neither a demotion nor a pay cut, but was

9   nonetheless motivated by the Supervisor's poor performance in his role as Supervisor.

10  Plaintiff also understands that this kind of "failing upwards" is not uncommon for male

11  employees in supervisory-level jobs with Defendant.

12  27.    Despite the hostility from many of the men in the IT / IS group and its pervasive

13  culture of sex discrimination, Plaintiff excelled in her position and was given additional

14  authority and responsibility.  For example, she co-chaired the Technology and Steering

15  Committee along with the IT / IS Manager.  Plaintiff understands that chairing a committee

16  such as this is ordinarily Manager-level work, which is two steps above Supervisor in title and

17  pay grade.  Indeed, the IT / IS Manager expressed this to her, along with his opinion that

18  Plaintiff was qualified for a Manager-level position.

19  28.    In or around the summer of 2019, the IT / IS Manager approached Plaintiff about the

20  direct hiring of some IT / IS staff who were then working for Defendant as contractors.  The

21  IT / IS Manager also specifically stated to Plaintiff that Defendant wanted to hire one or more

22  contractors directly because it anticipated that this would be less expensive and would save

23  money.

24  29.    The IT / IS Manager asked Plaintiff to draft a potential job description for one such

25  contractor in particular, who was male.  This contractor was Plaintiff's subordinate and

26  reported to her, and would continue to do so as a direct hire.

Complaint - Page 5
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

30.     Plaintiff agreed that her subordinate was potentially a good candidate for direct hire and drafted a job description to hire him directly as a "Business Partner / Project Manager." This is not a supervisory or management-level position, but is one of the internal job titles used by Defendant for the kind of work this person was already doing as a contractor.  As a direct hire, this employee would report (and did in fact continue to report) to Plaintiff, who was his Supervisor and his superior.

31.     In making an offer to this contractor, Defendant altered the proposed job title for this employee to "IT / IS Engineer."  It did so without consulting Plaintiff about the employee's role or the scope of his duties, nor about his performance as a contractor under her supervision.  Plaintiff understands that the only real distinction between the title she proposed and the one Defendant chose to use is that use of the word  "Engineer" in a job title is considered to carry additional prestige within Defendant's internal hierarchy, and is thus more likely to place the employee on a more rapid track for advancement or similar beneficial employment opportunities.

32.     Defendant offered to hire the contractor at a higher salary than it paid Plaintiff, even though Plaintiff was his Supervisor and superior, and even though it had told Plaintiff that it could not possibly offer her more money or meet the salary demand she had presented at hire.

33.     Defendant informed Plaintiff of these decisions after-the-fact but did not seek her input or approval.  To the contrary, Plaintiff protested the decisions immediately upon learning this information.

34.     Defendant has argued and admitted that it paid Plaintiff's male subordinate more than it paid Plaintiff because Plaintiff's team was being tasked with a large email migration project and the subordinate had prior experience in such a task.  But Plaintiff had much more recent experience in that type of project than the subordinate did, as the IT / IS Manager knew, having worked with her on such a project at a different company not long before she began working for Defendant and having – presumably – reviewed both Plaintiff's resume and that

Complaint - Page 6
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1  of the subordinate. Moreover, many of the types of specific tasks on this project that

2  Defendant claimed it hired the male employee to perform, it actually chose to outsource to a

3  third-party company.

4  35.    Defendant has argued and admitted that it paid Plaintiff's male subordinate more than

5  it paid Plaintiff because the email migration project involved coordination with Defendant's

6  Japanese affiliates and parent or sister companies, and the subordinate spoke some Japanese.

7  But in anticipation of this project, Plaintiff had already successfully advocated to have a well-

8  qualified female employee who was also a native, fluent Japanese-speaker transfered to her IT

9  / IS team from a different department. Plaintiff understands that Defendant paid this female

10 employee less than half of what it paid the male employee, who was less fluent in Japanese

11 and often relied on his female colleague for assistance with the language. Defendant also did

12 not award the female employee some sort of internally-prestigious title.

13 36.    Defendant has argued and admitted that it paid Plaintiff's male subordinate more than

14 it paid Plaintiff simply because that was the male subordinate's salary demand. Defendant

15 made no similar attempt to meet Plaintiff's salary demand, but instead probed into her then-

16 current pay and told her it could not possibly even match that, let alone her salary demand.

17 37.    Plaintiff protested and objected to Defendant's hiring of a male subordinate at a higher

18 pay rate than it was paying Plaintiff, and again demanded of the IT / IS Manager that

19 Defendant meet her initial salary demands or otherwise raise her pay, which would have put

20 her salary in a comparable range to that of the other two, male, more-highly-paid IT / IS

21 Supervisors. The Manager gave evasive answers such as that he would look into it, but took

22 no significant action to correct the pay differential of which Plaintiff is aware, and the

23 differential was not corrected.

24 38.    Not long after Defendant hired a male subordinate onto Plaintiff's team at a higher

25 salary than it was paying Plaintiff, the IT / IS Manager began to require use of some

26 emergency personal and / or medical leave. In his absence, an increasing number of his duties

Complaint - Page 7
Case No. 20-2-02465-06

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1    fell to Plaintiff. For example, while she had previously co-chaired committee assignments
2    with the Manager – which was, as noted above, work that Plaintiff understands is ordinarily
3    assigned to Managers – now she acted as sole chair. In addition, subordinates of the
4    Supervisor who harassed Plaintiff and her team, who had previously been instructed to report
5    directly to the Manager due to that Supervisor's incompetence, were now going directly to
6    Plaintiff for work information and instructions.

7    39.    Plaintiff continued to complain about the unfair pay differential to the Manager, and
8    also to assume increasing numbers of his duties while he needed to be absent, but continued
9    to receive evasive answers to her demands for appropriate pay, and nothing was done to
10   correct the problem. Instead, Defendant directed Plaintiff and her team to start reporting to a
11   different Manager, who was not part of the IT / IS subdepartment and was outside of the
12   ordinary chain-of-command for the IT / IS teams.

13   40.    The new Manager, another man as virtually all of Defendant's higher-level
14   supervisory employees are, expressed immediate hostility, disdain, and criticism towards
15   Plaintiff and her team, which was still the only IT / IS team with any women on it. The
16   Manager openly belittled and derided Plaintiff's team, stated to Plaintiff that he saw no reason
17   for the team's existence and thought it was a waste of money, demanded that Plaintiff justify
18   her entire team's existence to him, and was otherwise openly hostile and critical towards
19   Plaintiff and Plaintiff's team.

20   41.    Plaintiff observed no similar opinions, attitudes, or behaviors from this Manager in
21   regards to the male IT / IS Supervisors or their all-male IT / IS teams.

22   42.    In addition to belittling and demeaning Plaintiff and her team, the new Manager
23   further demanded that Plaintiff perform tasks of the type ordinarily assigned to Plaintiff's
24   subordinates or other lower-level IT / IS employees on other teams. Plaintiff perceived that
25   the Manager treated her as though she were equal in level and stature to her own subordinate
26   employees. Plaintiff protested that she was being assigned the work of a subordinate and was

Complaint - Page 8
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1    being treated disrespectfully and not in accordance with her position as a Supervisor.  The

2    Manager nonetheless demanded that Plaintiff perform a subordinate's tasks; and as she was

3    directed to do so in her job, Plaintiff performed all tasks assigned to her.

4    43.    Around and following this same time period, the original IT / IS Manager began

5    unloading awkward personal information onto Plaintiff, during work time, and without

6    invitation to do so.  For example, he began disclosing suspicions about his wife, who was also

7    herself a former employee of Defendant, including that he was performing and / or intended to

8    perform electronic surveillance on her.  Plaintiff found these kinds of statements alarming and

9    uncomfortable.

10   44.    Plaintiff does not believe that the Manager raised these kinds of topics with any male

11   employees, nor that he would have said these kinds of things to her except for the fact that she

12   is a woman.  Because she is a woman, the Manager disregarded that his relationship with

13   Plaintiff was a business relationship, and chose to unload his awkward and alarming personal

14   emotional material on her because he wished to vent and / or because he wished to make

15   Plaintiff uncomfortable.  In doing so, he used his position of authority as Plaintiff's superior

16   to require Plaintiff to act as his personal "emotional support system" and foisted an

17   expectation upon her that she be a sympathetic ear as he made alarming and disconcerting

18   statements about his plans *vis a vis* his wife, who was herself a former employee of

19   Defendant.  These and other biased gender stereotypes and expectations were routinely

20   imposed on Plaintiff in the course of her employment because Plaintiff is a woman.

21   45.    Although he unloaded all sorts of uncomfortable, awkward, and alarming personal

22   information onto Plaintiff during work time, the Manager still did not take any action of

23   which Plaintiff is aware to address Plaintiff's pay complaints, and no change was made to

24   address Plaintiff's lower pay rate.

25   46.    During her employment with Defendant, Plaintiff observed that Defendant advances

26   its male employees at a faster rate than its female employees; pays its male Supervisors more

Complaint - Page 9
Case No. **20-2-02465-06**

**Schuck Law, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1  than its female Supervisors;and likewise pays other male employees more than female

2  employees who do the same or comparable work; and it employs virtually no women in its

3  upper management.

4  47.    On average, Defendant pays its male Supervisors more than it pays its female

5  Supervisors.  On information and belief, this is also true of its male and female Managers.

6  48.    On average, Defendant promotes men into Supervisor positions roughly twice as

7  quickly as it promotes women into those positions.  Phrased another way: the time from hire

8  to promotion to a Supervisor position is for men about half that which it is for women.

9  49.    On average, Defendant promotes men into the higher-level Senior Supervisor

10  positions more quickly than it promotes women to even the lower-level Supervisor positions.

11  None of Defendant's Senior Supervisors are women.

12  50.    To Plaintiff's knowledge, only three women have ever attained a title above

13  Supervisor or the pay raise that comes with such higher-level management positions within

14  Defendant's business.  All of its Senior Supervisors are men.  All but two of its Managers are

15  men.  All its Vice Presidents are men.  Its Executive Vice President is also a man.

16  51.    Plaintiff complained to Defendant about its culture of discrimination and acts of

17  harassment by male employees, its failure to advance any women into higher-level roles, and

18  its failure to pay women -- including herself -- comparably with men of equal title and / or

19  substantially similar scope of work and responsibility.  Plaintiff protested and objected to

20  Defendant's unlawful practices and to its culture of discrimination.

21  52.    The explanations that Defendant gave Plaintiff for its inequitable treatment and pay of

22  women rely on highly subjective criteria subject to both implicit and explicit bias, and which

23  evidence a culture of discrimination just as Plaintiff complains.  To the extent that Defendant

24  puts forth objective criteria for job positions or for advancement, it readily waives those

25  criteria for men while strictly enforcing them against women, and / or claims to assign value

26  to qualifications in male employees while discounting those same qualifications in women

Complaint - Page 10
Case No.  20-2-02465-06

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1  | employees.

2  | 53.      There is no process at Defendant's business through which women can attain positions

3  | above Supervisor.  Defendant only advertises upper-level management positions when it seeks

4  | to deny such positions to well-qualified women employees, whereas it readily awards

5  | promotions and pay increases to men without application or competitive process.  Its policies

6  | and practices encourage sex-based bias in assessing and applying criteria for promotion.  To

7  | the extent it employs any objective criteria, it enforces them harshly against women but

8  | waives them for men, and it discounts the same qualifications in women employees that it

9  | ascribes value to in men.   Its job descriptions and promotion descriptions do not even

10 | reference equal employment opportunities.  Its decisionmaking is frequently based on gender

11 | stereotypes that disadvantage women.

12 | 54.      Plaintiff originally accepted her job with Defendant because she believed it would be a

13 | good opportunity to grow or expand the position in accordance with Defendant's anticipated

14 | needs, and to further advance her career.  However, after about two years of enduring all of

15 | the aforementioned, and complaining of it all without correction, and instead being subjected

16 | to continued harassment and discrimination and to retaliatory treatment and belittlement of

17 | her work, all because she is a woman and because her IT / IS team included women, it became

18 | apparent to Plaintiff that these aspirations were unlikely to be realized.  It was obvious to her

19 | that the primary obstacle she faced in her employment with Defendant was that she is a

20 | woman.

21 | 55.      Fed up with the discriminatory and harassing treatment, the belittling conduct, the

22 | lower pay of herself and other qualified women, and Defendant's failure to correct any of it

23 | despite complaints, Plaintiff quit.

24 | 56.      After Plaintiff quit and made her intention to pursue a legal complaint clear, she

25 | received a harassing and personally insulting anonymous letter by mail, which she suspects

26 | was sent by an agent or representative of Defendant insofar as the sender had access to her

Complaint - Page 11
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1  personal mailing address and the letter appeared to reference her employment-related legal

2  complaints.

3  57.   Plaintiff further understands that a number of women in Defendant's employ have

4  made either formal or informal complaint of Defendant's culture and practice of sex-based

5  discrimination.  Defendant is aware of the discrimination, and fosters and perpetuates it.

6  58.   The above-listed examples of Defendant's policy and culture of sex discrimination,

7  and of its unlawful and discriminatory practices and conduct towards Plaintiff, are non-

8  exhaustive.  Plaintiff reserves the right to raise additional facts and / or to amend her

9  Complaint in accordance with the evidence and as continuing facts develop.

10                              IV.   CLAIMS

11                  CLAIM ONE: VIOLATIONS OF TITLE VII

12                             Sex Discrimination

13  59.   Plaintiff reasserts and incorporates by reference all paragraphs, as though fully set

14  forth herein again.

15  60.   Defendant discriminated against Plaintiff in violation of 42 USC 2000-e *et. seq.* by

16  paying her less than her male counterparts and colleagues with similar jobs, job titles, and / or

17  responsibilities, for work performed under the same or similar circumstances.

18  61.   Defendant discriminated against Plaintiff in violation of 42 USC 2000-e *et. seq.* by

19  denying her the pay commensurate with the work and responsibility it requires of her position.

20  62.   Defendant discriminated against Plaintiff in violation of 42 USC 2000-e *et. seq.* by

21  denying her the pay commensurate with the work and responsibility of her male counterparts

22  and colleagues with similar jobs and / or responsibilities, for work performed under the same

23  or similar circumstances.

24  63.   Defendant discriminated against Plaintiff in violation of 42 USC 2000-e *et. seq.* by

25  fostering, permitting, condoning, and failing to put a stop to continuing acts of harassment and

26  discriminatory conduct and commentary in Plaintiff's workplace, which were insulting and

Complaint - Page 12
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1 | offensive to Plaintiff and to her female co-workers.

2 | 64.     Defendant treated Plaintiff disparately and less favorably than her male counterparts

3 | and colleagues with respect to her wages, position, and other terms and conditions of

4 | employment.

5 | 65.     Defendant's policies, procedures, and practices produced a disparate and

6 | disadvantageous impact on Plaintiff and other women with respect to wages, position, and

7 | other terms and conditions of employment.

8 | 66.     Defendant denied Plaintiff equal terms, conditions, benefits, and privileges of

9 | employment, all because Plaintiff is a woman.

10 | 67.     Defendant's unlawful and discriminatory practices and policies, and its unlawful and

11 | discriminatory treatment of Plaintiff persisted throughout the course of Plaintiff's employment

12 | with Defendant.

13 | 68.     Rather than putting a stop to its unlawful practices, Defendant responded to Plaintiff's

14 | complaints by retaliating against Plaintiff in a manner intended to discourage Plaintiff from

15 | pursuing her legal rights and remedies and to punish her for objecting to Defendant's unlawful

16 | sex discrimination.

17 | 69.     Plaintiff has exhausted her administrative remedies and her Complaint against

18 | Defendant is timely filed.

19 | 70.     Plaintiff has sustained damages as a result of Defendant's discriminatory conduct.

20 | 71.     Defendant's unlawful conduct has been and is deliberate, willful, malicious, and / or

21 | conducted in reckless and callous disregard for the law and for Plaintiff's rights.

22 | 72.     Plaintiff seeks damages pursuant to Title VII of the Civil Rights Act, in the form of all

23 | lost wages and compensation incurred as a result of Defendant's discriminatory conduct and

24 | its violations of the law; interest on all amounts due to her; costs and attorneys' fees; and

25 | punitive damages as authorized by Title VII.

26 | ///

Complaint - Page 13
Case No. **20-2-02465-06**

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

**CLAIM TWO: VIOLATIONS OF WLAD**

**Sex Discrimination**

73.    Plaintiff reasserts and incorporates by reference all paragraphs, as though fully set forth herein again.

74.    The acts and allegations set out herein constitute violations of the Washington Law Against Discrimination (WLAD), RCW ch. 49.60.

75.    Plaintiff has sustained and continues to sustain damages as a result of Defendant's discriminatory conduct.

76.    Defendant's unlawful conduct has been and is deliberate, willful, malicious, and / or conducted in reckless and callous disregard for the law and for Plaintiff's rights.

77.    Plaintiff seeks damages and remedies pursuant to WLAD, RCW ch. 49.60, in the form of all lost wages and compensation incurred as a result of Defendant's continuing discriminatory conduct; interest on all amounts due to her; costs and attorneys' fees; and any other equitable or other remedy authorized by the Court as and under Title VII, as allowed by WLAD.

**CLAIM THREE: VIOLATIONS OF WA-EPA**

**Pay Inequity Based on Sex / Denial of Opportunity Based on Sex**

78.    Plaintiff reasserts and incorporates by reference all paragraphs, as though fully set forth herein again.

79.    The acts and allegations set out herein constitute violations of the Washington Equal Pay Act (WA-EPA), RCW ch. 49.58.

80.    Defendant discriminated against Plaintiff on the basis of sex in terms of compensation and opportunities, and denied her equal pay and / or title to that of male employees who are similarly situated and performed similar work.

81.    Plaintiff has sustained damages as a result of Defendant's discriminatory conduct.

82.    Defendant's unlawful conduct was willful.

Complaint - Page 14
Case No. **20-2-02465-06**

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

83.    Plaintiff seeks damages and remedies pursuant to WA-EPA, RCW ch. 49.58, in the

form of all lost wages and compensation incurred as a result of Defendant's discriminatory

conduct; liquidated and / or statutory damages; interest on all amounts due to her; costs and

attorneys' fees; and any other equitable or other remedy authorized by RCW ch. 49.58.

### CLAIM FOUR: CONSTRUCTIVE DISCHARGE

### IN VIOLATION OF TITLE VII, WLAD, AND WA-EPA

84.    Plaintiff reasserts and incorporates by reference all paragraphs, as though fully set

forth herein again.

85.    Defendant allowed, perpetuated, and maintained a culture of discrimination and a

work environment that was both objectively and subjectively offensive, oppressive, and

harassing based on sex.  Specific acts include but were not limited to allowing and tolerating

displays of pornography in the workplace; making denigrating and belittling comments

toward Plaintiff, the women on her team, and the team itself for including women, and also

allowing such comments to be made by both management and subordinates; paying women

including Plaintiff less than men for the same or substantially similar work; paying women

including Plaintiff less than men who held lesser roles and did lesser work; undermining and

degrading the work of Plaintiff and her team and the value of their work because the team

included women; assigning Plaintiff duties of a subordinate employee because she is a woman

and / or because she objected to Defendant's unequal treatment of women; requiring Plaintiff

to act as a personal emotional confidante to her male superiors because she is a woman;

failing to adequately respond to complaints of sex discrimination and harassment, or to put a

stop to the behaviors or address the toxic and discriminatory corporate culture; failing to offer

opportunities for advancement to women; and other behaviors that were harassing, degrading,

offensive, and hostile based on sex.

86.    Plaintiff complained of the above acts and of Defendant's failure to pay women

equally with their male counterparts, and its failure to advance women.  Plaintiff protested and

Complaint - Page 15
Case No.  20-2-02465-06

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

ATTACHMENT A
Page 16 of 19

1   objected to Defendant's unlawful practices and to its culture of discrimination. Defendant

2   responded, both during Plaintiff's employment and seemingly afterwards as well, by

3   penalizing and / or retaliating against Plaintiff and by subjecting her to continued

4   mistreatment such as described.

5   87.     Defendant did not correct the harassment and mistreatment based on sex, but allowed

6   it to continue and / or to get worse.

7   88.     Defendant knowingly and / or intentionally created and allowed acts and conditions of

8   discrimination, harassment , and retaliation in violation of Title VII, WLAD, WA-EPA, and

9   the public policy of the state of Washington as expressed thereby and elsewhere.

10  89.     Due to Defendant's perpetuation of harassment and discrimination in the workplace

11  and its refusal to take effective corrective action despite complaints from Plaintiff and others,

12  Plaintiff ultimately had no choice but to quit.

13  90.     Plaintiff was motivated to quit because of Defendant's perpetuation of harassment and

14  discrimination in the workplace, its refusal to take effective corrective action, and its

15  retaliatory actions and attitude against her, which were material factors in her decision.

16  91.     Plaintiff's decision to quit was reasonable; and a reasonable person subjected to such

17  ongoing unlawful mistreatment would not want to be forced to continue to tolerate it, and

18  would therefore have no choice but to quit.

19  92.     Plaintiff has suffered damages as a result of Defendant's perpetuation of a hostile and

20  offensive work environment, and is due lost / back wages as a result of Defendant's actions

21  and conduct.

22  93.     Plaintiff seeks damages for her lost / back wages as authorized by Title VII, WLAD,

23  WA-EPA, and / or the common law of Washington; interest on all amounts due to her; costs

24  and attorneys' fees under those and other applicable wage laws of Washington; and any other

25  equitable or other remedy authorized by law and deemed appropriate by this Court.

26  ///

Complaint - Page 16
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

## V.   DAMAGES

94.     Plaintiff is entitled to all lost and unpaid wages and compensation incurred as a result of Defendant's discriminatory conduct and its violations of Title VII, WLAD, and WA-EPA, in an amount to be determined by a jury at trial and after discovery is complete, but initially estimated at not less than $35,000.00.

95.     Plaintiff is entitled to further damages for her back pay / lost wages as a result of Defendant's perpetuation of a hostile work environment and its constructive discharge of Plaintiff in violation of Title VII, WLAD, WA-EPA, and / or the public policy of Washington, in an amount to be determined by a jury at trial and after discovery is complete, but initially estimated at not less than $45,000.00.

96.     Plaintiff is entitled to all and any other monetary reimbursements and / or out-of-pocket expense reimbursements due to her as a result of Defendant's unlawful conduct and practices that are authorized by Title VII, WLAD, and WA-EPA, in amounts to be determined by a jury at trial and after discovery is complete.

97.     Plaintiff is entitled to punitive damages as authorized by Title VII, up to the maximum amount so authorized under Title VII and / or 42 USC 1981a.

98.     Plaintiff is entitled to liquidated and / or statutory damages as authorized by WA-EPA.

99.     Plaintiff is entitled to pre- and post-judgment interest on any and all amounts awarded.

100.    Plaintiff is entitled to her costs, disbursements, and attorney fees pursuant to Title VII, WLAD, and WA-EPA.

101.    Plaintiff is entitled to damages for the tax consequences of any damage award.

102.    Plaintiff reserves the right to seek any other available relief, including injunctive relief or other equiable relief as authorized by law.

103.    Plaintiff reserves the right to seek relief and remedies for any defense or counterclaim asserted by Defendant in bad faith and / or without foundation, including but not limited to any costs or fees incurred.

Complaint - Page 17
Case No. **20-2-02465-06**

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

ATTACHMENT A
Page 18 of 19

1

## VI.   JURY DEMAND

2   104.   Plaintiff requests trial by jury on all claims and all issues.

3

## VII.   PRAYER FOR RELIEF

4   WHEREFORE, Plaintiff prays for entry of judgment against Defendant for:

5       1.   All lost / unpaid wages;

6       2.   Further compensatory damages for Plaintiff's back pay / lost wages;

7       3.   Liquidated / statutory damages;

8       4.   Costs, disbursements, and attorneys' fees;

9       5.   Pre- and post-judgment interest;

10       6.   Tax consequences of any general damage award; and

11       7.   Any other relief deemed appropriate by the Court.

12

13   DATED:  December 23, 2020.

14

15   s/ Leslie E. Baze
LESLIE E. BAZE, OSB 103326, WSB 45781
16   lbaze@wageclaim.org
Attorney for Plaintiff

17

18

19

20

21

22

23

24

25

26

Complaint - Page 18
Case No. **20-2-02465-06**

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763